COURT OF APPEALS
DECISION
DATED AND FILED

August 29, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1457**

STATE OF WISCONSIN

Cir. Ct. No. 2019CV162

IN COURT OF APPEALS
DISTRICT III

KENNETH J. STANKOWSKI AND DOREEN M. STANKOWSKI,

PLAINTIFFS-APPELLANTS,

V.

CITY OF WAUSAU,

DEFENDANT-RESPONDENT.

APPEAL from a judgment of the circuit court for Marathon County: GREGORY B. HUBER, Judge. *Affirmed in part; reversed in part and cause remanded for further proceedings*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. This appeal involves the amount of just compensation that Kenneth and Doreen Stankowski were entitled to receive following a taking of their property by the City of Wausau. A jury determined that the fair market value of the condemned property—a rooming house—was less than the City's jurisdictional offer. However, the jury found in the Stankowskis' favor regarding the value of a remnant parcel that remained following the initial taking. The Stankowskis now appeal, seeking a new trial with respect to the rooming house only, based on eleven claimed evidentiary errors by the circuit court.

¶2 We reject nine of the Stankowskis' claims of error. We agree with the Stankowskis, however, that the circuit court erred by: (1) admitting evidence of fire code violations documented between 2014 and 2017; and (2) admitting hearsay statements contained within a July 12, 2019 memo authored by a City employee. We therefore affirm in part, reverse in part, and remand for a new trial regarding the amount of just compensation to which the Stankowskis were entitled for the City's taking of the rooming house.[1]

---

[1] Because we conclude that the circuit court erred by admitting the 2014-2017 fire code violations and the hearsay statements from the July 12, 2019 memo, we need not address the Stankowskis' nine other claims of error. *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (court of appeals need not address all issues raised by the parties if one is dispositive). Nevertheless, we choose to do so in order to provide guidance to the circuit court and the parties, as these additional issues are likely to arise again on remand.

## BACKGROUND

¶3     The Stankowskis owned a fourteen-room rooming house located at 242 East Thomas Street in the City of Wausau.[2]  On December 13, 2018, the City condemned the rooming house in order to expand East Thomas Street.  As a result of the taking, the Stankowskis were left with a remnant parcel consisting of 10,727 square feet of vacant land.  The City subsequently condemned the remnant parcel on January 2, 2019.

¶4     In March 2019, the Stankowskis filed separate lawsuits challenging the City's awards of damages for the rooming house (Marathon County case No. 2019CV162) and the remnant parcel (Marathon County case No. 2019CV167).  The circuit court subsequently granted the City's motion to consolidate the two cases.

¶5     The consolidated cases were ultimately tried to a jury.  The sole issue at trial was the amount of just compensation to which the Stankowskis were entitled for the City's takings.  Because the condemnation of the rooming house on December 13, 2018 was a partial taking, the jury was asked to determine the fair market value of the entire Thomas Street property immediately before and

---

[2] The background facts in this section are largely taken from the Stankowskis' brief-in-chief and are not disputed by the City.  We note, however, that many of the factual assertions in the Stankowskis' statement of the case are not supported by citations to the appellate record, in violation of WIS. STAT. RULE 809.19(1)(d) (2021-22).  Because the City does not dispute these factual assertions, we will accept them as true for purposes of this appeal.  However, we caution counsel for the Stankowskis that future violations of the Rules of Appellate Procedure may result in sanctions.  *See* WIS. STAT. RULE 809.83(2) (2021-22).

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.  Although the taking in this case occurred in December 2018, the relevant statutes have not been amended since that time.

immediately after the taking. For the January 2, 2019 taking of the remnant parcel, which was a total taking, the jury was simply asked to determine the fair market value of the remnant parcel immediately before the taking.

¶6    The jury returned a verdict in favor of the Stankowskis with respect to the remnant parcel. With respect to the rooming house, however, the jury returned a verdict that was less than the City's jurisdictional offer. The Stankowskis then filed postverdict motions challenging various evidentiary rulings, which the circuit court denied.

¶7    The Stankowskis now appeal, seeking "a new trial in Marathon County Circuit Court Case No. 19-CV-162, the rooming house" case. Additional facts are provided below as necessary.

## DISCUSSION

¶8    Each of the Stankowskis' eleven claims of error asserts that the circuit court improperly admitted evidence at trial. A circuit court has broad discretion in making evidentiary rulings, and we review decisions to admit or exclude evidence for an erroneous exercise of discretion. *Martindale v. Ripp*, 2001 WI 113, ¶28, 246 Wis. 2d 67, 629 N.W.2d 698. "As with other discretionary determinations, this court will uphold a decision to admit or exclude evidence if the circuit court examined the relevant facts, applied a proper legal standard, and, using a demonstrated rational process, reached a reasonable conclusion." *Id.*

¶9    This standard is "highly deferential." *Id.*, ¶29. "The question on appeal is not whether this court, ruling initially on the admissibility of the evidence, would have permitted it to come in, but whether the [circuit] court exercised its discretion in accordance with accepted legal standards and in

4

accordance with the facts of record." *Id.* (citation omitted). "We will not find an erroneous exercise of discretion if there is a rational basis for a circuit court's decision." *Id.*

## I. 1998 appraisal of 616 McClellan Street

¶10    The Stankowskis first argue that the circuit court erred by admitting testimony regarding a 1998 appraisal of another property that the Stankowskis owned—a rooming house located at 616 McClellan Street in Wausau. The appraisal was prepared for a lending institution by Scott Williams Appraisal Inc. ("Williams Appraisal") and was authored by Karen Mikalofsky, an employee of Williams Appraisal. The Stankowskis argue that evidence regarding this appraisal was irrelevant because: (1) the appraisal was twenty years old as of the date of the taking; (2) it was not an appraisal of the Thomas Street property; (3) it was not evidence of a comparable sale under WIS. STAT. § 32.09(1m)(a); and (4) it was not a "fair market appraisal," as that term is used in eminent domain proceedings, because it did not consider the "most advantageous use" of the McClellan Street property, *see* § 32.09(2).

¶11    The Stankowskis' argument in this regard construes the concept of relevancy too narrowly, suggesting that evidence is relevant only if it directly proves or disproves an element of a plaintiff's claim. "Relevant evidence," however, is broadly defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." WIS. STAT. § 904.01. This broad definition was intended to encompass all evidence that "tends to cast any light upon the subject of the inquiry." *State v. Richardson*, 210 Wis. 2d 694, 707, 563 N.W.2d 899 (1997) (citation omitted).

¶12 Notably, "[a] witness's credibility is always 'consequential' within the meaning of WIS. STAT. § 904.01." *State v. Marinez*, 2011 WI 12, ¶34, 331 Wis. 2d 568, 797 N.W.2d 399 (citation omitted). Here, evidence regarding the 1998 appraisal of the McClellan Street property was properly admitted to impeach the credibility of the Stankowskis' expert appraiser, Cherie Laffin. Laffin testified at trial as an employee of Williams Appraisal regarding opinions formed within the scope of her employment. The evidence showed that in December 2019, Laffin completed an appraisal of the Thomas Street property, which she valued as of December 13, 2018—the date of the taking. In reaching her valuation, Laffin did not consider the Thomas Street property's actual rental income. Instead, she began by attributing to the property a "potential gross income" of $63,000, which she derived by considering the monthly rent charged for studio or efficiency apartments at various apartment buildings in the area.

¶13 Laffin conceded that she did not receive any documentation regarding the Thomas Street property's actual rental income until after her deposition in May 2021. Supplemental income and loss statements introduced into evidence at trial showed that the Thomas Street property had gross rental income of only $45,750 in 2015 and $43,484 in 2016—significantly less than the $63,000 of "potential gross income" that Laffin used in her appraisal.

¶14 In contrast, evidence regarding the 1998 appraisal of the McClellan Street property showed that Mikalofsky had used the McClellan Street property's actual rental income when determining its value. In ruling on the admissibility of this evidence, the circuit court noted, "[T]he City is arguing … that the methodology used for the McClellan appraisal[] differed from the methodology that the Stankowskis' expert used for the property at issue here, and it should be permitted to show as much." The court continued, "Given that

both properties were rooming houses, the valuation methods employed for each are relevant here. The difference in methodology is a fair area for inquiry and is not unfairly prejudicial, particularly given that both sets of appraisals were done by the same company."

¶15    Stated differently, given that Williams Appraisal performed both the 1998 appraisal of the McClellan Street property and the 2019 appraisal of the Thomas Street property, evidence that its appraisers used different methodologies when performing the appraisals was relevant to impeach Laffin's credibility regarding the accuracy of the 2019 appraisal. The circuit court provided a rational basis for its conclusion that evidence regarding the 1998 appraisal of the McClellan Street property was relevant, and, as such, the court's decision in that regard was not an erroneous exercise of discretion. While the Stankowskis emphasize that the 1998 appraisal was prepared for a lending institution, and not in the eminent domain context, we conclude that this factor goes to the weight of the evidence, rather than its admissibility.[3]

---

[3] On appeal, the Stankowskis do not develop any argument that the probative value of the evidence regarding the 1998 appraisal of the McClellan Street property was substantially outweighed by the danger of unfair prejudice under WIS. STAT. § 904.03. We therefore do not address that issue.

The circuit court also concluded that the 1998 appraisal of the McClellan Street property was relevant because "rooming houses are relatively rare in Wausau, [and] the McClellan [Street] property is a comparable property such that its value is relevant to the value of the property at issue here." The Stankowskis assert that the court erred in this regard because the 1998 appraisal was not "made within a reasonable time before or after the date of evaluation" of the Thomas Street property and because the appraisal is not a "good faith sale or contract to sell and purchase" the McClellan Street property. *See* WIS. STAT. § 32.09(1m)(a).

(continued)

¶16      The Stankowskis also assert that the 1998 appraisal of the McClellan Street property was "hearsay," that the appraisal was not "a self-authenticating document," and that they "had no opportunity to cross-examine Ms. Mikalofsky." We agree with the City, however, that the Stankowskis' hearsay argument is inadequately developed. Neither the 1998 appraisal of the McClellan Street property nor the valuation contained in that appraisal was introduced into evidence at trial. Evidence regarding the 1998 appraisal was not introduced to prove the truth of the matter asserted therein—i.e., the appraised value of the McClellan Street property. *See* WIS. STAT. § 908.01(3). Instead, the evidence was introduced to impeach the credibility of the Stankowskis' appraiser by showing the different methodology used by the same appraisal company in 1998. The Stankowskis do not identify with specificity any testimony regarding the 1998 appraisal that they believe constituted inadmissible hearsay. We therefore decline to address their undeveloped hearsay argument. *See **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

## II.  1998 appraisal of the Thomas Street property

¶17      The Stankowskis next argue that the circuit court erred by admitting an appraisal of the Thomas Street property that Mikalofsky performed for

---

To the extent the circuit court erred by concluding that the 1998 appraisal was relevant because the McClellan Street property was a "comparable property," the error was harmless. Neither the 1998 appraisal itself nor the appraised value of the McClellan Street property was introduced into evidence at trial. Thus, the jury could not have considered that information when determining the fair market value of the Thomas Street property. As such, any error by the circuit court in this regard was harmless because it did not affect the Stankowskis' substantial rights. *See* WIS. STAT. §§ 805.18(2) (stating that no judgment shall be reversed or set aside based on an alleged error unless "the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment"), 901.03(1) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected.").

Williams Appraisal in June 1998. In essence, the Stankowskis assert that the 1998 appraisal of the Thomas Street property was not relevant to establishing the property's fair market value at the time of the taking in December 2018 because: (1) the appraisal was twenty years old; (2) Mikalofsky did not consider the "most advantageous use" of the property, *see* WIS. STAT. § 32.09(2); and (3) an appraisal is not a sale or a contract to sell, *see* § 32.09(1m)(a).

¶18    We reject this argument because, as with the appraisal of the McClellan Street property, the 1998 appraisal of the Thomas Street property was not introduced to show the Thomas Street property's fair market value at the time of the taking in December 2018. It was introduced to impeach Laffin's credibility with respect to the methodology that she employed when appraising the Thomas Street property. Similar to the appraisal of the McClellan Street property, Mikalofsky used the Thomas Street property's actual rental income when valuing that property in 1998. In contrast, Laffin used the property's potential gross income when determining its value in 2018. We agree with the City that the 1998 appraisal of the Thomas Street property "raises questions as to why [Williams Appraisal] used different valuation methods on different occasions for the same parcel." As such, like the appraisal of the McClellan Street property, the 1998 appraisal of the Thomas Street property was relevant to impeach Laffin's credibility. Again, the fact that the 1998 appraisal was prepared for a lending institution, and not in the eminent domain context, goes to the evidence's weight,

not its admissibility. Consequently, the circuit court did not erroneously exercise its discretion by admitting the appraisal.[4]

### III. Municipal code violations

¶19     The Stankowskis also argue that the circuit court erred by allowing the City to introduce evidence of two municipal code violation notices that the City's building inspector issued regarding the Thomas Street property. On August 26, 2016, the City issued a notice concerning standing water in the utility room, mold in the bathrooms and shower areas, and the need to install operable windows or fans in the bathroom and shower areas. On January 30, 2017, the City issued a notice concerning a smoke detector without a battery on the second floor of the building, concerns with the condition of the threshold seal of the main entry door, the need to repair the building's furnaces so that the utility room door could be kept closed, the failure to keep the lower bathroom and kitchen floor areas clean, the presence of cockroaches in the bathrooms and kitchen areas, and the need to repair a toilet, vanity, and tile in the upper bathroom.

¶20     The Stankowskis assert that these municipal code violations were irrelevant because they occurred "two to three years" before the date of the taking. According to the Stankowskis, there was no evidence that these code violations

---

[4] On appeal, the Stankowskis assert that 1998 appraisal of the Thomas Street property was "obviously hearsay." In response, the City asserts that the Stankowskis forfeited this argument because they "made no hearsay objection when the appraisal was discussed and admitted at trial." The Stankowskis do not respond to the City's forfeiture argument in their reply brief, and we therefore deem the point conceded. *See* *Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979). In any event, the Stankowskis' hearsay argument is inadequately developed, and we also reject the argument on that basis. *See* *State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992). The Stankowskis' conclusory assertion that the admission of the appraisal was plain error is similarly undeveloped, and, accordingly, we also decline to address that argument. *See id.*

continued to exist at the time of the taking. The Stankowskis further assert that no witness testified that these "old municipal code violations would affect [the] fair market value of the subject property on the date of taking or the amount a willing buyer would pay for the subject property." The Stankowskis contend that the code violations were both irrelevant to the issue of the property's fair market value and "highly prejudicial."

¶21 We disagree. It is self-evident that the code violations noted by the City in August 2016 and January 2017 reflected issues regarding the condition of the property that would have affected a landlord's ability to rent the units in the building—or the amount of rent that tenants would be willing to pay—which, in turn, would have affected the property's fair market value. *See American Fam. Mut. Ins. Co. v. Shannon*, 120 Wis. 2d 560, 568, 356 N.W.2d 175 (1984) ("A judge or juror is allowed to consider knowledge or experience attained in the every day affairs of life in making a decision.").

¶22 Furthermore, while the Stankowskis assert there is no evidence that the code violations continued to exist on the date of the taking, the record would permit a contrary conclusion. For instance, on direct examination, Kenneth Stankowski[5] acknowledged that there had been mold in the property's second-floor bathroom in the past, but he testified that he "had a contractor come in and install a fan up there which corrected the problem." The Thomas Street property has two bathrooms, however, and the August 2016 code violation notice documented mold in "the bathroom*s* and/or shower area*s*." (Emphasis added.) A

---

[5] We refer to Kenneth Stankowski as "Kenneth" throughout the remainder of this opinion.

photograph admitted at trial showed mold in the downstairs bathroom in August 2016. On cross-examination, Kenneth conceded that he had not installed a fan in the downstairs bathroom to counteract the mold problem in that room. On this record, a jury could reasonably infer that mold remained in the downstairs bathroom at the time of the taking in December 2018. Furthermore, the August 2016 code violation notice was relevant to impeach Kenneth's credibility on the issue of whether he had fully remediated the property's mold problem.

¶23 The January 2017 code violation notice, in turn, documented a total of eleven violations. Among other things, the Stankowskis were ordered to implement an extermination plan and repair the property's furnaces. During his direct examination at trial, Kenneth testified that there were no cockroaches in the Thomas Street property at the time of the taking and that it had been "years" since there had been cockroaches in the building. No evidence was presented at trial, however, that the Stankowskis had ever implemented an extermination plan for the cockroaches, as required by the January 2017 code violation notice. Instead, Kenneth testified at trial that he mixed boric acid and sugar—using a formula that he found on the internet—and placed the mixture in every room at the Thomas Street property, which "took care of" the cockroaches. Kenneth conceded that he never hired an exterminator to address the cockroach problem.

¶24 In addition, receipts introduced at trial showed that Kenneth bought "Roach Bait" in January 2017 and reimbursed a tenant for "Roach Bait" in March 2017. This evidence permits an inference that efforts to address the cockroach problem were still underway at the Thomas Street property in March 2017—after the February 13, 2017 deadline contained in the January 2017 code violation notice. Thus, contrary to the Stankowskis' assertion, the evidence at trial would have supported a reasonable inference that the Thomas Street

property continued to have a cockroach problem after January 2017 and that the Stankowskis never fully remediated that problem in the manner required by the January 2017 code violation notice.

¶25 Kenneth also testified at trial that, "to [his] knowledge," both of the building's furnaces were working at the time of the taking. However, he conceded on cross-examination that his expense records for the Thomas Street property for the years 2014 through 2018 showed only one instance on which furnace work was performed at the property during that time—specifically, one hour of labor in 2014. Kenneth admitted that, aside from that single occasion in 2014, he never had any HVAC contractor at the property to work on the furnaces, despite the January 2017 code violation notice requiring the Stankowskis to repair the furnaces. In addition, a City employee with a background in furnace repair testified that he inspected the furnaces eleven days after the taking and determined that "the blower motor on one of the furnaces was not functional and unable to distribute heat" and that both furnaces showed a lack of annual maintenance and were in "[b]elow average" condition. This evidence would have permitted a reasonable inference that, contrary to Kenneth's initial testimony, the furnaces were not in working order at the time of the taking.

¶26 In support of their assertion that all of the municipal code violations were corrected before the taking, the Stankowskis cite the testimony of Richard Grefe, a former City property inspector. Specifically, the Stankowskis cite Grefe's testimony that, "[t]o the best of [his] knowledge and memory," the Stankowskis had corrected all of the code violations that Grefe had documented in August 2016 and January 2017. When asked whether there were any code violations at the time of the taking in December 2018, Grefe responded, "Nothing that I was part of." The jury was not, however, required to accept Grefe's

somewhat equivocal testimony on these points in the face of other evidence suggesting that the code violations had not been fully corrected. *See* ***Staehler v. Beuthin***, 206 Wis. 2d 610, 617, 557 N.W.2d 487 (Ct. App. 1996) ("Matters of weight and credibility are left to the jury, and where more than one reasonable inference can be drawn from the evidence, we must accept the inference drawn by the jury.").

¶27 The Stankowskis also assert that evidence regarding the municipal code violations was "prejudicial." To be excludable, however, relevant evidence "must not be simply prejudicial." ***State v. Alexander***, 214 Wis. 2d 628, 642, 571 N.W.2d 662 (1997). "By its very nature, nearly all evidence operates to the prejudice of the party against whom it is offered." ***State v. Murphy***, 188 Wis. 2d 508, 520, 524 N.W.2d 924 (Ct. App. 1994). The question is whether the evidence's probative value is substantially outweighed by the danger of *unfair* prejudice. *See* WIS. STAT. § 904.03. The Stankowskis do not develop any argument that the evidence regarding the municipal code violations satisfied this standard. Accordingly, their prejudice argument is undeveloped, and we decline to address it further. *See* ***Pettit***, 171 Wis. 2d at 646-47.

## IV. Presence of cockroaches

¶28 The Stankowskis next assert that the circuit court erred by admitting evidence regarding the presence of cockroaches at the Thomas Street property in the "years" before the taking. Again, the Stankowskis contend that there was "no evidence or testimony that there were cockroaches at [the Thomas Street property] in the approximately 18 months before the date of taking." The Stankowskis also assert that there was "no evidence or testimony from any witness … that the

presence of cockroaches in the 18 months preceding the date of taking would affect the fair market value of the subject property as of the date of taking."

¶29 As discussed above, Kenneth testified on direct examination at trial that there were no cockroaches in the Thomas Street property at the time of the taking and that it had been "years" since there were cockroaches in the building. Evidence of an ongoing cockroach problem at the property as late as March 2017 was relevant to impeach Kenneth's testimony on that point. And, as noted above, the notion that a cockroach infestation could affect the rentability of a rooming house—and, therefore, its fair market value—is within the knowledge and experience of an ordinary juror.

¶30 Moreover, Laffin conceded during her testimony that a bug infestation can affect the purchase price of an investment property, such as the Thomas Street property. That testimony provided a basis—beyond the jurors' own knowledge and experience—to find that a cockroach problem at the Thomas Street property could affect the property's value. We acknowledge that Laffin also testified that she did not believe the presence of cockroaches actually affected the value of the Thomas Street property because the problem was "so minor." Again, though, the jury was not required to accept Laffin's testimony in that regard, and evidence about the extent of the cockroach problem was relevant to allow the jury to assess the credibility of Laffin's testimony that the problem was only "minor" and, therefore, would not have affected the property's value. On this record, the circuit court did not erroneously exercise its discretion by admitting the cockroach evidence.

## V. Listing contract for the McClellan Street property

¶31     Next, the Stankowskis assert that the circuit court erred by admitting evidence that they had signed a listing contract in March 2013 to sell the McClellan Street property for $99,000.  The Stankowskis argue that this evidence was not relevant to establishing the fair market value of the Thomas Street property at the time of the taking in December 2018 because: (1) the listing contract did not pertain to the Thomas Street property; (2) the listing contract was signed over five years before the taking; and (3) a listing contract is analogous to an offer to purchase, and offers to purchase are generally not admissible as evidence of fair market value in condemnation cases, *see* ***Pinczkowski v. Milwaukee County***, 2005 WI 161, ¶42, 286 Wis. 2d 339, 706 N.W.2d 642.

¶32     We reject the Stankowskis' argument that the circuit court erred by admitting evidence regarding the 2013 listing contract.  During her deposition, Laffin conceded that her file contained a 2014 real estate listing for the McClellan Street property, which was published as a result of the 2013 listing contract.  Laffin testified that the listing provided "additional information" for her in completing her valuation of the Thomas Street property, but that she gave it "little weight" because of its age.  Because Laffin considered the listing information for the McClellan Street property when forming her opinion regarding the Thomas Street property, the court properly determined that the City should be permitted to cross-examine Laffin regarding the 2013 listing contract.  *See* WIS. STAT. § 907.05 (stating that an expert witness may be required to disclose facts or data underlying his or her opinion on cross-examination).

¶33     Kenneth also testified regarding the listing contract later on during the trial.  At that point, however, the jury had already been made aware of the list

price for the McClellan Street property during Laffin's testimony. We agree with the City that "any error attributable to repeating [the list price] with another witness was harmless," in that it did not affect the Stankowskis' substantial rights. *See* WIS. STAT. §§ 805.18(2), 901.03(1); *see also **Bollen v. Shinoe***, 212 Wis. 481, 484, 250 N.W. 505 (1933) (concluding that the admission of certain testimony was harmless error where admissible evidence on the same subject matter was properly admitted during a different witness's testimony).

¶34 In addition to arguing that evidence regarding the 2013 listing contract was irrelevant, the Stankowskis also assert that this evidence was "prejudicial." Again, however, the Stankowskis fail to develop an argument that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice under WIS. STAT. § 904.03. Accordingly, we decline to address their undeveloped prejudice argument. *See **Pettit***, 171 Wis. 2d at 646-47.

## VI. Purchase price of the Thomas Street property

¶35 The Stankowskis next argue that the circuit court erroneously admitted evidence that they had purchased the Thomas Street property for $180,000 in 1998. They contend that the property's purchase price in 1998 was too remote in time to be relevant to its fair market value in December 2018—approximately twenty years later.

¶36 Our supreme court has held that

> [e]vidence of the price paid for condemned real property on a sale prior to the proceedings in which condemnation is sought is generally admissible in such proceedings, at least where the sale is voluntary, is not too remote in point of time, or is not otherwise shown to have no probative value.

17

*Huse v. Milwaukee Cnty. Expressway Comm'n*, 16 Wis. 2d 225, 228, 114 N.W.2d 429 (1962) (citation omitted). Thus, the Stankowskis are correct that a property's purchase price may not be admissible if the sale was too remote in time. However, courts are "more inclined to hold that the period of time which elapsed between the date of purchase and the date of the taking is too remote where there is some evidence of a change of circumstances in the interim." *Id.* (citation omitted). The Stankowskis have not cited any evidence showing that a material change in circumstances occurred between their purchase of the Thomas Street property in 1998 and the taking in December 2018. Absent such evidence, the circuit court did not erroneously exercise its discretion by concluding that the 1998 purchase price was relevant and was not too remote in time.

¶37     In arguing to the contrary, the Stankowskis cite *Lindsay v. Housing Authority*, 18 Wis. 2d 624, 119 N.W.2d 357 (1963). In that case, our supreme court held that the plaintiffs' purchase of the subject property five years before the taking was not "current or contemporaneous with the taking." *Id.* at 626. As a result, the court concluded that the plaintiffs did not qualify "for the benefit of the rule" that "an actual sale of the property in question very near to the time at which the value is to be fixed, is of great weight as contrasted with evidence of mere opinion." *Id.* (citation omitted). Instead, "the cost of the property five years earlier was just one factor to be considered by the trier of fact" in determining the property's value on the date of the taking. *Id.* at 626-27.

¶38     Thus, the *Lindsay* court determined that the fact finder could consider a five-year-old sale of the subject property when determining the property's value on the date of the taking. Nothing in *Lindsay* required the circuit court in this case to conclude that the purchase price of the Thomas Street property was inadmissible simply because it occurred twenty years before the date of the

taking.   Accordingly, *Lindsay* does not compel a conclusion that the court erroneously exercised its discretion by admitting the purchase price of the Thomas Street property.

## VII. Photographs

¶39   Next, the Stankowskis argue that the circuit court erred by admitting photographs of the Thomas Street property that were taken at the time of the City's inspection in August 2016.   These photographs show cockroach bait and traps, mold, what appears to be liquid on the floor of the utility room, and tape that a tenant had placed over a heating vent to prevent cockroaches from entering his unit.   The Stankowskis also assert that the court erred by admitting a photograph dated June 29, 2017, which shows damage to a door frame.

¶40   The Stankowskis argue that these photographs were not relevant because they showed the condition of the property long before the date of the taking and no testimony was presented that the photographs accurately reflected the property's condition on that date.   In addition, the Stankowskis again assert that there was no testimony that the things depicted in the photographs would have affected the property's fair market value.

¶41   We have already determined that the circuit court did not erroneously exercise its discretion by admitting testimony regarding the municipal code violations, the cockroach infestation, and the general condition of the property shown in the challenged photographs.   We agree with the City that "[i]f the jury was allowed to **hear** evidence regarding the subjects of [the photographs], it follows that the jury could also **see** evidence of those subjects without one being considered 'relevant evidence' and the other not."   Notably, the Stankowskis do not develop any argument that the admission of the photographs themselves—as

19

opposed to testimony regarding the subject matter of the photographs—was unfairly prejudicial under WIS. STAT. § 904.03. In addition, we agree with the City that it could properly use the photographs when cross-examining Laffin, given that she had obtained and considered the photographs when conducting her appraisal of the Thomas Street property. *See* WIS. STAT. § 907.05.

## VIII. Tenants' criminal records and number of police calls

¶42 The Stankowskis next assert that the circuit court erred by admitting evidence regarding: (1) the criminal records of tenants at the Thomas Street property; and (2) the number of police calls regarding the property. We conclude that the Stankowskis failed to properly preserve their argument regarding the tenants' criminal records, and we reject their claim that the number of police calls was irrelevant and therefore inadmissible.

¶43 Before trial, the Stankowskis filed a motion in limine seeking to prohibit the City from introducing the criminal records of any tenants living at the Thomas Street property on the grounds that such evidence was irrelevant.[6] The Stankowskis also argued that this evidence should be excluded because the United States Department of Housing and Urban Development had issued "official guidance" in 2016 stating that "blanket standards rejecting any housing applicant with a criminal conviction are discriminatory and in violation of the Fair Housing Act, and that convicted criminals can be denied housing only if the reason for their convictions clearly puts the safety of other tenants or the property at risk."

---

[6] The Stankowskis also moved to preclude the City from introducing evidence that one of the property's tenants may have been a registered sex offender. Ultimately, however, that evidence was not introduced at trial.

¶44    On the morning of the first day of trial, the circuit court denied the Stankowskis' related motion to exclude evidence regarding the number of police calls regarding the Thomas Street property.  However, the court did not provide a definitive ruling regarding the tenants' criminal records.  Instead, the court stated, "[I]f you get into some area that is objectionable, I assume [the Stankowskis' attorney] will object to any particular question and I will rule on it when I hear it in context."

¶45    At trial, no evidence was introduced regarding any specific tenant's criminal record.  On cross-examination, Kenneth responded in the affirmative when asked whether he took referrals from probation agents for "people with criminal records who can't find a place to live."  The Stankowskis did not object to that question.  The City did not introduce any other evidence regarding the tenants' criminal records or ask any additional questions related to that topic.  We agree with the City that, under these circumstances, the Stankowskis forfeited their argument that the circuit court erred by allowing the City to introduce evidence that some of the tenants at the Thomas Street property had criminal records.  Moreover, the Stankowskis do not respond to the City's forfeiture argument in their reply brief, and we therefore deem the point conceded.[7]  *See Charolais*

---

[7] On appeal, the Stankowskis also note that Kenneth testified on cross-examination that some of his tenants may have been drug users.  However, the Stankowskis' motion in limine sought to exclude evidence of the tenants' criminal records, not drug use.  The Stankowskis did not object to the question regarding drug use at trial.

The Stankowskis also assert on appeal that Kenneth "acknowledged" on cross-examination that one of his tenants had a restraining order against another tenant.  However, the pages of the trial transcript that the Stankowskis cite in support of this proposition do not contain any reference to a restraining order.  We are unable to locate any portion of the trial transcript where evidence regarding a restraining order was introduced.

***Breeding Ranches, Ltd. v. FPC Sec. Corp.***, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979).

¶46    As for the number of police calls regarding the Thomas Street property, the circuit court determined that evidence was relevant to the issue of "what you can rent this [property] for." The court did not erroneously exercise its discretion in that regard. Again, we conclude that it is within the ordinary knowledge and experience of an average juror that a high number of police calls at a rooming house would affect the amount of rent that potential tenants would be willing to pay, which would then affect the property's fair market value.

¶47    Regardless, Laffin's testimony would have further supported a reasonable inference by the jury that the number of police calls about the Thomas Street property affected its fair market value. On direct examination, Laffin responded in the negative when asked whether a prospective buyer of a rooming house would be concerned about the quality of the building's current tenants. Laffin then explained that "these are month-to-month leases," so a landlord can improve the quality of a property's tenants by raising the rent, which will cause undesirable tenants to leave or to be evicted for failing to pay their rent. Laffin then gave an example of another property in Wausau that "had a problem with security" and "was kind of an area you didn't want to go down to." She testified that after that property sold in 2018, the new owner "cleaned up the units," "got the tenants out of there, raised the rents, and got some good tenants in there," which dramatically increased the property's value. Laffin also testified regarding another apartment complex in Wausau that was able to increase its selling price using the same approach.

¶48    Based on Laffin's testimony, the jury could reasonably infer that the 2018 fair market value of a Wausau rooming house that had low-quality tenants, security problems, or appeared to be in a "bad area" would have been significantly less than the fair market value of a property without those issues. The jury subsequently heard Kenneth's testimony that the police were called "[s]everal" times about the Thomas Street property—and possibly as many as fifty to sixty times per year. In light of Laffin's testimony, the jury could reasonably infer that the Thomas Street property was worth less because of the amount of police activity at the property, which had not yet been corrected using same methods employed by the owners of Laffin's example properties. Accordingly, evidence regarding the number of police calls was relevant to the property's fair market value, and the circuit court did not erroneously exercise its discretion by admitting that evidence.

## IX.  1998 tax assessed value

¶49    Before trial, the Stankowskis filed a motion in limine seeking to prevent the City from introducing any evidence of the "current tax assessment" for the Thomas Street property. In response, the City agreed that evidence regarding the property's current tax assessment should not be presented to the jury; however, the City argued that "**past** tax assessments prior to and at the time of the taking[]" were "not only relevant and probative but … something both appraisal experts were required to consult in forming their valuation opinions in this case." The circuit court agreed with the City, holding that "the tax assessment history is relevant and was actually considered by the parties' appraisers."

¶50    Thereafter, on cross-examination at trial, Laffin testified that the Thomas Street property's assessed value in 1998 was $168,600. The Stankowskis

contend that this testimony was irrelevant, and therefore inadmissible, because: (1) the 1998 assessment was not performed as of the date of the taking in December 2018; (2) a tax assessment is not evidence of a good faith sale or contract to sell and therefore does not establish a property's fair market value; and (3) a tax assessment does not consider the property on the basis of its most advantageous use, *see* WIS. STAT. § 32.09(2). The Stankowskis also allege that, contrary to the circuit court's understanding, "neither of the parties' appraisers considered the tax assessment history as being relevant in determining the fair market value of the subject property on the date of taking."

¶51     We agree with the City that, to the extent the circuit court erred by admitting Laffin's testimony regarding the 1998 assessed value of the Thomas Street property, the error was harmless. *See* WIS. STAT. §§ 805.18(2), 901.03(1). Following Laffin's testimony regarding the assessed value, the City introduced the 1998 appraisal of the Thomas Street property, which we discussed in greater detail above. That appraisal contained the same assessed value of $168,600 that Laffin had mentioned during her testimony. We have already concluded that the court did not err by admitting the 1998 appraisal. Under these circumstances, the admission of Laffin's testimony regarding the 1998 assessed value was harmless, as the same evidence was later properly admitted as part of the 1998 appraisal. *See **Bollen***, 212 Wis. at 484.

## X.  Fire code violations

¶52     The Stankowskis also argue that the circuit court erred by admitting evidence of nonstructural fire code violations that were documented at the Thomas Street property by the City of Wausau Fire Department between 2014 and 2017. The Stankowskis assert that these violations were not relevant because there was

no evidence that they continued to exist on the date of the taking or that that they had any effect on the property's fair market value as of that date.

¶53 The circuit court concluded that the 2014-2017 fire code violations—although irrelevant on their own—were nevertheless admissible because the Stankowskis had opened the door by presenting an August 6, 2018 fire department inspection report, which stated that there were no violations at that time. The court agreed with the City that presenting a single inspection report from 2018 showing no violations could "mislead the jury [that there] was never a violation found at the facility," which opened the door for the City to correct that misleading impression by introducing evidence of fire code violations from prior years.

¶54 "[T]he curative admissibility doctrine, commonly referred to as 'opening the door,' … is applied when one party accidentally or purposefully takes advantage of a piece of evidence that … would normally be inadmissible." *State v. Dunlap*, 2002 WI 19, ¶14, 250 Wis. 2d 466, 640 N.W.2d 112. "Under such circumstances, the court may allow the opposing party to introduce otherwise inadmissible evidence if it is required by the concept of fundamental fairness to prevent unfair prejudice." *Id.* The curative admissibility doctrine only applies, however, when one party opens the door with *inadmissible* evidence. *State v. Krueger*, 2008 WI App 162, ¶8 n.5, 314 Wis. 2d 605, 762 N.W.2d 114.

¶55 As noted above, the circuit court determined that the Stankowskis' introduction of the August 2018 fire department report opened the door to the admission of evidence regarding prior fire code violations. The City does not develop any argument, however, that the August 2018 report was inadmissible. In fact, the City did not object when the Stankowskis offered that report into

evidence at trial. The circuit court did not conclude that the August 2018 report was inadmissible, and it appears to this court that the August 2018 report was properly admitted. Under these circumstances, the curative admissibility doctrine was inapplicable, and the circuit court erroneously exercised its discretion by determining that evidence regarding the 2014-2017 fire code violations was admissible under that doctrine.

¶56 The City does not develop any argument that the circuit court's error in admitting the 2014-2017 fire code violations was harmless. Lacking a developed argument from the City on this point, we decline to apply the harmless error doctrine. The 2014-2017 fire code violations were not relevant to the fair market value of the Thomas Street property on the date of the taking in December 2018, as it is undisputed that the violations no longer existed as of August 2018. Moreover, it is possible that the jury improperly used the inadmissible fire code violations to determine a lower value for the Thomas Street property than it otherwise would have. Consequently, we cannot say that the admission of the fire code violations did not affect the Stankowskis' substantial rights. *See* WIS. STAT. §§ 805.18(2), 901.03(1). As such, this error requires reversal.

## XI. July 12, 2019 memo

¶57 Finally, the Stankowskis assert that the circuit court erred by admitting a July 12, 2019 memo drafted by City employee Ric Mohelnitzky, who had passed away before trial. In the memo, Mohelnitzky stated that on December 29, 2018—eleven days after the taking—he received a phone call from the company charged with relocating the Thomas Street property's tenants, informing him that there was no heat in the building. Mohelnitzky went to the

26

property and "found that the temperature in the complex was about 40 (forty) degrees in the lower level." Mohelnitzky "met with tenants of the building" who told him "that one of the furnaces has not worked for months and the other one stopped working on" December 28. Mohelnitzky then confirmed that neither furnace was working.

¶58 After discussing the situation with Eric Lindman, the City's director of public works and utilities, Mohelnitzky called Malbrit Heating and Cooling "for a service call to check the furnace." A Malbrit employee came to the Thomas Street property but told Mohelnitzky "that he would not be able to work on the furnace because of the poor condition of it." A City employee trained in furnace repair was ultimately able to fix the furnace.

¶59 On the morning of the second day of trial, the Stankowskis moved to exclude Mohelnitzky's memo, asserting that it was hearsay and also contained "hearsay within hearsay." The City responded that the memo was admissible under several exceptions to the hearsay rule—namely, as a record of regularly conducted activity, *see* WIS. STAT. § 908.03(6); as a public record, *see* § 908.03(8); as a statement of recent perception, *see* WIS. STAT. § 908.045(2); and under the catch-all exceptions in § 908.03(24) and § 908.045(6). The circuit court deferred ruling on the Stankowskis' motion to exclude the memo.

¶60 The City subsequently sought to introduce the memo during Lindman's testimony. Lindman testified that he had been the City's director of public works and utilities for seven years and, in that capacity, was Mohelnitzky's supervisor. Lindman further testified that Mohelnitzky contacted him in December 2018 to tell him that the Thomas Street property had no heat "and that they were going to go over to do some inspection and hopefully correct the issue."

27

Lindman then identified Mohelnitzky's July 12, 2019 memo as being a public record maintained by the City's Department of Public Works. He further testified that he was the custodian of that record and that the record was created "to document the work that was completed [at the Thomas Street property in December 2018] and the response."

¶61 The City then offered the memo into evidence and asked to publish it to the jury. The Stankowskis objected on hearsay grounds, asserting: "The date it was created, it's not contemporaneous with the event. It was created [on] July 19th of this December 29th incident. So it's created like seven—more than seven months after the fact. It's hardly normal business activities of the organization and contains hearsay within hearsay." The City responded that the memo was "a record of a regular[ly] conducted activity. It is a public record. It has been identified as a Department of Public Works record to document what took place that day. And it is a statement of [Mohelnitzky's] regular activities." The circuit court agreed that the memo was admissible as a public record under WIS. STAT. § 908.03(8). Lindman then provided additional testimony regarding the contents of the memo, as set forth above.

¶62 On appeal, the Stankowskis argue that the circuit court erred by admitting Mohelnitzky's July 12, 2019 memo because the memo "was not timely created relative to the incident, did not set forth the activities of the agency, and the document was hearsay and contained hearsay within hearsay." In particular, the Stankowskis emphasize that the memo contained "statements made by unidentified tenants" of the Thomas Street property "alleging that one of the furnaces … had not been working for months." The Stankowskis assert that these hearsay statements "were critical in the case in light of the fact the condition of the furnaces was a major issue in the trial and [Kenneth] testified that the furnaces

were in good working condition as of the date of taking." The Stankowskis note that they had no opportunity to cross-examine the unidentified tenants, and they assert that the admission of the tenants' statements "dramatically undermined [Kenneth's] credibility." The Stankowskis also assert that the Malbrit employee's statement regarding the poor condition of the furnace constituted hearsay within hearsay.

¶63    We agree with the City and the circuit court that the July 12, 2019 memo itself was admissible as a public record under WIS. STAT. § 908.03(8). That exception to the hearsay rule allows a court to admit

> [r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law, or (c) in civil cases and against the state in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Sec. 908.03(8). The only foundation necessary to introduce a public record under this exception is that the record "be identified by a competent witness." *State v. Keith*, 216 Wis. 2d 61, 77, 573 N.W.2d 888 (Ct. App. 1997).

¶64    Here, the July 12, 2019 memo was identified by a competent witness—namely, Lindman. Lindman identified the memo as having been authored by Mohelnitzky to document work performed by the City at the Thomas Street property in December 2018. Lindman's testimony and the memo's contents show that the memo is a record of a public office or agency setting forth "the activities of the office or agency." *See* WIS. STAT. § 908.03(8). Consequently, the circuit court did not erroneously exercise its discretion by

concluding that the memo itself was admissible under the public records exception to the hearsay rule.

¶65  The circuit court did not, however, address the Stankowskis' argument that the memo contained inadmissible hearsay within hearsay. "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule[.]" WIS. STAT. § 908.05.  On appeal, the Stankowskis assert that none of the hearsay exceptions in WIS. STAT. ch. 908 apply to the hearsay statements in the July 12, 2019 memo made by the unidentified tenants and the Malbrit employee.

¶66  In response, the City asserts that there are "several 'hearsay' exceptions which would have justified the [circuit] court treating any 'hearsay within hearsay' statements" in the memo as admissible.  Specifically, the City cites the exception in WIS. STAT. § 908.03(1) for present sense impressions and the catch-all exception in § 908.03(24)—both of which can apply "even though the declarant is available as a witness."  The City also contends that the hearsay statements within the memo were admissible as statements of recent perception under WIS. STAT. § 908.045(2) and under the catch-all exception in § 908.045(6)—both of which apply only when the declarant is unavailable as a witness.

¶67  We conclude that the hearsay exceptions in WIS. STAT. § 908.045 are inapplicable because the City has not shown that the tenants and the Malbrit employee referenced in the July 12, 2019 memo were unavailable as witnesses. Because these individuals were not identified by name in the memo, the City asserts it is "reasonable to conclude" that the City "would have been unable to procure their attendance by process or other reasonable means at the time of the

[April] 2022 trial, making [them] 'unavailable' under WIS. STAT. § 908.04(1)(e)." A declarant is unavailable under § 908.04(1)(e) when he or she "[i]s absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance by process or other reasonable means."

¶68    Here, the City does not cite evidence that it made any effort to procure the tenants' or the Malbrit employee's attendance at trial, by process or any other means. While the City suggests that it could not have done so because these individuals were not named in the memo, the City was the owner of the Thomas Street property at the time of the events described in the memo and would have been aware of the individuals who were tenants of the property at that time. The City does not allege that it made any effort to locate those individuals or to determine which specific tenants made the statements referenced in the memo. The City also fails to allege that it contacted Malbrit or made any other effort to discern the identity of the Malbrit employee discussed in the memo. Under these circumstances, we cannot agree that it is "reasonable to conclude" that these individuals were unavailable under WIS. STAT. § 908.04(1)(e). Consequently, the hearsay exceptions in WIS. STAT. § 908.045 are inapplicable.

¶69    Turning to WIS. STAT. § 908.03—which applies regardless of whether a declarant is unavailable—we agree with the City that the Malbrit employee's statement that he "would not be able to work on the furnace because of the poor condition of it" was admissible under § 908.03(1), the hearsay exception for present sense impressions. A present sense impression is "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Sec. 908.03(1). The Malbrit employee's statement described the condition of the furnace

immediately after the employee perceived that condition. As such, that statement was admissible under § 908.03(1).

¶70 Conversely, the statements of the tenants do not qualify as present sense impressions under WIS. STAT. § 908.03(1). According to the memo, the tenants told Mohelnitzky "that one of the furnaces" at the Thomas Street property had not worked "for months" and that the other furnace had stopped working the previous day. These statements about the condition of the furnaces during the preceding months and on the previous day were not made "while the declarant was perceiving the event or condition, or immediately thereafter." Accordingly, the statements were not admissible under § 908.03(1).

¶71 Nor do we agree with the City that the tenants' statements were admissible under the catch-all exception in WIS. STAT. § 908.03(24), which applies to statements "not specifically covered by any of the foregoing exceptions but having comparable circumstantial guarantees of trustworthiness." The City asserts that the tenants' statements have circumstantial guarantees of trustworthiness because they were "apparently made for the legitimate purpose of helping the City fix the furnace and restore heat to the building." However, as the Stankowskis note, the tenants who made these statements "are the same tenants who"—according to the City—"may have contributed to 50 to 60 police calls a year, were potential drug users, or may otherwise be involved in other antisocial behavior." It is also possible to infer that the tenants may have exaggerated the length of time that that the furnaces had been inoperable to encourage a prompt response by the City. Under these circumstances, we cannot conclude that the tenants' statements have sufficient circumstantial guarantees of trustworthiness to be admissible under § 908.03(24).

¶72    Accordingly, the circuit court erroneously exercised its discretion by admitting the tenants' statements contained within the July 12, 2019 memo. Notably, the City does not develop any argument that the admission of the tenants' statements constituted harmless error. Regardless, based on the record before us, we cannot conclude that the error was harmless. Kenneth testified at trial that, "to [his] knowledge," the building's furnaces were working at the time of the taking. Only eleven days after the taking, however, tenants told Mohelnitzky that one of the furnaces had been inoperable for "months." That statement directly contradicted Kenneth's testimony and could have affected the jury's assessment of his credibility. Under these circumstances—and lacking a developed harmless error argument by the City—we cannot conclude that the erroneous admission of the tenants' statements did not affect the Stankowskis' substantial rights. *See* WIS. STAT. §§ 805.18, 901.03(1). The admission of the tenants' statements therefore constituted reversible error.

## CONCLUSION

¶73    In summary, while we reject the majority of the Stankowskis' appellate arguments, we conclude that the circuit court erroneously exercised its discretion by: (1) admitting evidence of the 2014-2017 fire code violations; and (2) admitting the tenants' hearsay statements contained in Mohelnitzky's July 12, 2019 memo. We therefore affirm in part, reverse in part, and remand for a new trial in case No. 2019CV162 regarding the fair market value of the rooming house.

¶74    No costs are awarded to any party.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.